Wayne **LINDAHL**, Petitioner,

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
Respondent.

**Appeal No. 39–81.**

United States Court of Appeals,
Federal Circuit.

Oct. 22, 1985.

---

John Murcko, Oakland, Cal., argued for petitioner.

Robert A. Reutershan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., and David M. Cohen, Director, Washington, D.C.

Before DAVIS, BENNETT and BISSELL, Circuit Judges.

DAVIS, Circuit Judge.

This is the case in which the Supreme Court recently held that this court has jurisdiction over appeals of decisions of the Merit Systems Protection Board (MSPB or Board) refusing claims for civil service physical disability retirement, but also ruling that we can consider only whether "there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination"; conversely, we cannot review the factual underpinnings of such disability determinations. *Lindahl v. Office of Personnel Management,* —— U.S. ——, 105 S.Ct. 1620, 1628, 1633, 84 L.Ed.2d 674 (1985). Under that standard, the principal question now before us is whether the MSPB properly allocated the burden of proof upon petitioner, a voluntary applicant for physical disability retirement, to establish, by a preponderance of the evidence, his claim of entitlement to

civil service disability retirement benefits pursuant to 5 U.S.C. § 8337 (1982).[1]

We hold that the Board did not err in continuing the long-standing practice of the former Civil Service Commission (CSC) of allocating the burden of proof to a voluntary applicant for disability retirement. Accordingly, we affirm.

I.

Petitioner Lindahl was a civilian security guard at the Mare Island Naval Shipyard in Vallejo, California. He suffers from acute and chronic bronchitis, allegedly aggravated in part by his exposure over the years at Mare Island. A major activity at Mare Island is the repairing and painting of naval vessels. As a result, sandblasting, spray painting, and the use of solvents are common occurrences.

Both before and after his separation from the service, Lindahl unsuccessfully applied for a disability retirement annuity. He first applied on February 21, 1978 after his personal physician reported that he was permanently disabled due to acute and chronic bronchitis, caused in part by industrial pollutants at the job site. On July 18, 1978 the former CSC denied petitioner's application because there was insufficient evidence to indicate total disability. Petitioner did not appeal this denial.

In June 1979 Lindahl's personal physician again notified the Department of the Navy at Mare Island that he was incapable of working at the shipyard because of the nature of the pollutants at the site. On September 4, 1979 the Department of the Navy informed him that he would be terminated because his physical condition had disabled him to such an extent that he was "unable to perform the full range of his duties." This removal became final on October 5, 1979. Petitioner did not contest his separation or appeal it to the MSPB.

---

**1.** 5 U.S.C. § 8337(a) states that "Any employee shall be considered to be disabled only if the employee if [sic] found by the Office of Personnel Management to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment, under procedures prescribed by the Office, to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service."

On September 5, 1979, a day after petitioner received notice of the proposed separation, he submitted his physician's statement to the Navy on a form that is used to accompany an application for retirement benefits, but he did not file a formal application for disability retirement with the Office of Personnel Management (OPM) until October 9, 1979, four days after his removal had become final. The OPM referred petitioner to a physician who examined him in February 1980. This physician concluded that he did not have any pulmonary physiological disability.

Several months after petitioner's removal, OPM denied his claim on the ground that the evidence did not establish that petitioner had "a disability severe enough to prevent useful, efficient, and safe performance of the essential duties of the position" from which he was seeking retirement. Upon reconsideration, the claim was again denied by OPM. Pursuant to 5 U.S.C. § 8347(d)(1) (1982), petitioner appealed OPM's decision to the MSPB.

After a hearing, the Board's presiding official sustained OPM's denial, finding that petitioner had not demonstrated by a preponderance of the evidence that he was disabled within the meaning of the Retirement Act. The presiding official placed the burden of proof upon petitioner for the following reasons. First, the official noted that it is a general rule of law that the party asserting the existence of disputed facts must pursuade the trier of fact that they are true. Second, the party with the best knowledge of the facts should bear the burden of proof as to those facts.

Third, in similar cases where applicants seek benefits, the applicant has the burden of establishing entitlement to benefits.[2] Very shortly thereafter, the full Board, in another physical disability retirement case, confirmed in a published decision that the burden of proof lies with the voluntary applicant. *Chavez v. Office of Personnel Management,* 6 MSPB 343, 350–53, 6 M.S. P.R. 404, 413–17 (1981).

On this appeal Lindahl contends that the Board erred in this allocation of the burden of proof. His argument is that 5 U.S.C. § 7701(c)(1)(B)[3] necessarily applies to these retirement cases, and that provision allocates the burden of proof upon OPM to establish, by a preponderance of the evidence, that voluntary applicants for disability retirement are not disabled within the meaning of 5 U.S.C. § 8337(a), *supra.*

▮▮▮▮ The flaw in this position is the assumption that all of § 7701 necessarily governs, by force of the statute alone, the proceedings in voluntary physical disability retirement cases. It is clear, rather, that the basic source of the Board's authority in this general area lies in 5 U.S.C. § 8347(d)(1), which provides that such retirement matters "may be appealed to the Merit Systems Protection Board *under procedures prescribed by the Board*" (emphasis added).[4] It is the Board, acting under that specific power, which has generally prescribed the procedures of § 7701 for these cases. *Chavez v. Office of Personnel Management, supra,* 6 MSPB at 348–50, 6 M.S.P.R. at 411–14. But at the very same time, and in the very same ruling, the

**2.** For example, the presiding official noted that applicants have the "burden of establishing entitlement to disability benefits under the Social Security Act," *Billings v. United States,* 334 F.Supp. 1392, 1393 (D.Neb.1971); the same is true of black lung benefits under the Federal Coal Mine Health and Safety Act, *Brock v. Weinberger,* 405 F.Supp. 1329 (W.D.Ark.1975); and workmen's compensation under the Longshoremen's Compensation Act, *Eschbach v. Contractors, Pac. Naval Air Base,* 181 F.2d 860 (7th Cir.1950).

**3.** 5 U.S.C. § 7701(c)(1) provides that, in appeals heard by the MSPB pursuant to § 7701(b), "the

decision of the agency shall be sustained ... only if the agency's decision—(A) in the case of an action based on unacceptable performance ... is supported by substantial evidence, or (B) in any other case, is supported by a preponderance of the evidence."

**4.** 5 U.S.C. § 8347(d)(1) states that "an administrative action or order affecting the rights or interests of an individual or of the United States under this subchapter [governing civil service retirement] may be appealed to the Merit Systems Protection Board under procedures prescribed by the Board."

Board has explicitly placed the burden of proof on the voluntary applicant. *Id.* at 350–53, 6 M.S.P.R. at 414–17. The result is that, though the MSPB has determined that most aspects of § 7701 shall apply to voluntary disability retirement cases (*see Simmons v. Merit Systems Protection Board,* 768 F.2d 323 (Fed.Cir.1985) (where this court held that the MSPB has authority under 5 U.S.C. § 7701(g) to award attorney fees to an employee prevailing on her claim for disability retirement)), the Board has also expressly provided that the burden of proof in the physical disability retirement section shall rest with the voluntary applicant—in contrast to the rule in adverse action cases where the burden is on the agency.

■ We agree with the Board—as it has explicated in *Chavez*—that its allocation of the burden of proof in voluntary physical disability retirement cases is permissible because it does not contravene the Civil Service Reform Act or that statute's legislative history. For one thing, even if we were to look only to the bare text of the Act, it would be hard to reconcile paragraph (2) of 5 U.S.C. § 8347(d)[5] with the

stance that all of § 7701 necessarily applies to every retirement case. That paragraph specifically directs the Board to review agency applications for retirement of an employee on mental disability grounds under all the procedures of § 7701. It seems highly implausible that, if the Congress intended that the very same procedures apply in both involuntary mental and voluntary physical disability retirement cases before the Board, it would have left the statute in its present form. It is much more reasonable to infer that Congress has continued to direct the Board to establish, as it has, the appropriate procedures for voluntary physical disability retirement appeals.

As for the Reform Act's legislative history, *Chavez* correctly noted that that history discloses that Congress addressed burden of proof "only in the context of agency-initiated actions *against* employees (or applicants), as in misconduct or performance-related cases," and not in the context, as here, of voluntary actions initiated by the applicant. *Chavez v. Office of Personnel Management, supra,* 6 MSPB at 350–51, 6 M.S.P.R. at 413–15.[6]

---

**5.** 5 U.S.C. § 8347(d)(2) provides that:

In the case of any individual found by the Office to be disabled in whole or in part on the basis of the individual's mental condition, and that finding was made pursuant to an application by an agency for purposes of disability retirement under section 8337(a) of this title, the procedures under section 7701 of this title shall apply and the decision of the Board shall be subject to judicial review under section 7703 of this title.

**6.** The conference report discussion of burden of proof, in full, states that:

The Senate bill puts the burden of proof in cases of alleged employee misconduct on the employing agency. For actions based on unacceptable performance, the Senate provides that "the agency shall have the initial burden of proof subject to an opportunity for rebuttal by the employee," in establishing its case.

The House amendment places the burden of proof in both misconduct and performance cases on the employing agency.

The conference substitute in section 7701 adopts the House approach.

H.R.Conf.Rep. No. 95–1717, 95th Cong., 2d Sess. 138, *reprinted in* 1978 U.S.Code Cong. & Ad. News, 2723, 2872.

Moreover, the discussion concerning the preponderance of the evidence standard is related to *standards of review,* and not to burden of proof. The conference report states that:

The Senate bill provides that for actions based upon unacceptable performance the agency action will be upheld unless "there is no reasonable basis on the record for the agency's decision." For actions based upon misconduct the standard in the Senate bill is "substantial evidence."

The House amendment provides that both for actions based on unacceptable performance and upon misconduct the agency's action shall be sustained only if its decision is supported by a preponderance of evidence introduced before the MSPB.

The conference substitute in section 7701(c) provides that the *standard of proof* in misconduct cases will be "preponderance of the evidence." The conferees agreed, though, that in performance cases a lower *standard of proof* should be required because of the difficulty of proving that an employee's performance is unacceptable. The conference substitute therefore provides that an agency's decision in performance cases shall be upheld if its action is supported by substantial evidence in the record before the MSPB. The substantial

It is equally significant that there is no indication in the legislative history "that Congress intended to allocate the burden of persuasion to OPM in cases where the employee voluntarily initiates the action ... to establish entitlement" to disability retirement benefits. *Id.* at 351, 6 M.S.P.R. at 414–15. This absence of comment regarding burden of proof in disability retirement cases is even more telling in the light of the former CSC's practice of placing the burden of persuasion on the voluntary applicant in disability retirement appeals. If Congress had intended wholly to reverse the CSC's procedure, it undoubtedly would have indicated that intention in the legislative history of the Civil Service Reform Act of 1978.[7] But there is, as we have said, no discussion of the allocation of the burden of proof in disability retirement appeals. It seems quite clear that Congress was concerned with *adverse actions* when it promulgated 5 U.S.C. § 7701's provision implying that the agency has the burden of proof.

■ In addition, *Chavez* properly observes that one factor that is usually considered in the allocation of the burden of proof between parties is which side has the best knowledge of the particular disputed facts. *Chavez v. Office of Personnel Management, supra,* 6 MSPB at 351–52, 6 M.S.P.R. at 414–16. The party with the best knowledge normally sustains the burden. In voluntary physical disability retirement applications, the party who generally knows more about the applicant's physical and medical condition is the voluntary applicant himself—who thinks he is disabled and who has his physician's evaluation. In that situation it would not make too much sense to thrust upon the agency the burden

of disproving the truth of the bare application.

■ We hold, therefore, that the MSPB has the authority to impose on the applicant (here, Lindahl) the burden of proving his disability.

### III.

■ Petitioner also seeks to have us decide that his agency (the Navy) violated a provision of the Federal Personnel Manual by discharging him while his application for disability was pending. The basic answer is that he never appealed, or sought to appeal, his removal to the MSPB and accordingly we have no jurisdiction whatever over the propriety of that removal.[8] We add, however, that we are disturbed by the evident tension between (1) a removal for physical inability to do the job and (2) a subsequent denial to the same employee of disability retirement. We expressly leave open, for a case in which the issue is properly before us, the resolution of problems inherent in the relationship between the two actions.

AFFIRMED.

evidence test was adopted both because it is clearly a lower standard than now used in performance cases and because it is a generally understood term in administrative law. *Id.* at 138–39, U.S.Code Cong. & Admin.News 1978, at 2872 (emphasis added).

7. The mere technical substitution of the Merit Systems Protection Board for the Commission in § 8347(d) of the Civil Service Reform Act of 1978 does not, in any way, evidence a Congressional purpose to reallocate the burden of proof in voluntary disability retirement appeals before the Board.

8. Another response is that Lindahl was removed on October 5, 1979, but did not file this retirement application with OPM until October 9, 1979. No retirement application was pending at the time of his removal.